1  TERRACE ELLIS, PLAINTIFF
2  1617 FOXWORTHY AVENUE
   SAN JOSE, CA 95118
3  Telephone: (408) 621-6210
   sunhomme@gmail.com
4

5

6                    **UNITED STATES DISTRICT COURT**
7
                  **NORTHERN DISTRICT OF CALIFORNIA**
8

9

10  **TERRACE ELLIS**                )
                                      )   Case No. **cv-16-6437 BLF**
11                       Plaintiff,   )
                                      )   **SECOND AMENDED COMPLAINT AND DEMAND**
12       v.                           )   **FOR JURY TRIAL**
                                      )
13                                    )   **VIOLATIONS OF FAIR CREDIT REPORTING ACT**
    **CARDWORKS INC.,**               )   *15 U.S.C §1681*
14  **CARDWORKS SERVICNG,**           )
    **LLC., AND DOES 1-20**           )   **Demand Exceeds $10,000.00**
15                                    )
                         Defendants.) )
16                                    )

17

18                      **PLAINTIFF'S COMPLAINT**

19  Plaintiff alleges the following against CardWorks Inc., CardWorks Servicing, LLC.,

20  and Does 1-20 (Defendants).

21                             **PARTIES**

22    1.  Plaintiff is a natural person residing in San Jose, Santa Clara County, California.

23    2.  Plaintiff is a consumer as that term is defined by FCRA *15 U.S.C. §1681a* .

24    3.  Defendants are *persons*, as that term is defined by *15 U.S.C. §1681a*, who furnish

25    information to consumer reporting agencies pursuant to *15 U.S.C §1681s2*.

26    4. Defendants are national companies conducting business in California.

27    5. The principal executive officer of both CardWorks, Inc. ("CWI") and its subsidiary,

28
                                      -1-

       SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

1
2
CardWorks Servicing, LLC., ("CWS") is Donald M. Berman.  Each of these entities is located at

101 Crossways Park Drive Wst., Woodbury, New York 11797.

3
4
6. Defendant CWI was appointed to service and collect on delinquent Advanta accounts after

Advanta's closure by the FDIC in 2010.

5
6
## **INTRODUCTION**

7
7. On or about July 2010, CWI, a third-party bank card servicer and parent company of CWS,

8
9
10
11
was appointed as *successor servicer* to the Advanta credit card trust by Deutche Bank Trust

Company Americas, with the consent and agreement of the FDIC. This resulted in the closure

of Advanta Bank and its associated entities.

12
13
8. The Master Trust contained over 220,000 accounts**.**  Upon information and belief, the

account-at-issue, which has never belonged to Plaintiff, was among those 220,000 accounts.

14
15
9. Plaintiff's Complaint is based on violations of *15 U.S.C §1681 et seq.* the Fair Credit

Reporting Act (FCRA).

16
17
18
19
20
21
22
23
10.  Section 1681s-2(b) of the FCRA imposes duties upon furnishers of information.    These

obligations are triggered "upon notice of dispute"-that is, when a person who furnished

information to a Credit Reporting Agency ("CRA") receives notice from the CRA that the

consumer disputes the information.   *See §  1681i(a)(2)* (requiring CRAs promptly to provide

such notification containing all relevant information about the consumer's dispute). Subsection

1681s-2(b) provides that, after receiving a notice of dispute, the furnisher shall perform the

following steps - - failure to perform each of these steps is a separate violation under the statute:

24
25
26
27
28
(A)  conduct an investigation with respect to the disputed information;

(B)  review all relevant information provided by the [CRA] pursuant to section 1681i(a)(2);

(C)  report the results of the investigation to the [CRA];

(D)  if the investigation finds that the information is incomplete or inaccurate, report those results to all other [CRAs] to which the person furnished the information; and

(E)  if an item of information disputed by a consumer is found to be inaccurate or incomplete or

SECOND AMENDED COMPLAINT AND DEMAND FOR TRIAL BY JURY

1
2

cannot be verified after any reinvestigation under paragraph (1) .   (i) modify .   (ii) delete[or] (iii) permanently block the reporting of that item of information [to the CRAs].

3

11.  The statute goes on to spell out the CRAs investigative duty in some detail, requiring, *inter*

4

*alia,* that the CRA provide notification of the dispute to furnisher within five business days of

5

receipt of notice of a dispute from the consumer.  Upon notification by the CRA of the

6

consumer's dispute, the furnisher is expected to conduct at least a reasonable, non-cursory

7

investigation that comports with the aim of the statute to protect consumers from the

8
9

transmission of inaccurate information about them.  It is important to note that each of the above

10

obligations must be performed vis a vis each separate, distinct, and unique CRA, following a

11

consumer's dispute to that CRA.  Failure to do so constitutes a separate violation by the furnisher

12

with respect to each CRA to which a letter of dispute is sent.

13

12.  Under the FCRA, the deadline for a furnisher to both conduct and complete its investigation

14

following a consumer's dispute is 30 days.  If after that 30-day period the relevant CRA receives

15

no information from the furnisher regarding the dispute, then and only then can that CRA delete

16

the information from the consumer's file, or modify as appropriate.  (Section 611(a)(1); 15

17
18

U.S.C. 1681i(a)(1)   Once deleted, the CRA promptly notifies the furnisher that the information

19

has been deleted or modified and ensures that the information is not reinserted into the

20

consumer's file unless the furnisher certifies that the information is complete and accurate

21

(Section 611(a)(5)(A), (a)(5)(B)(i).

22

13.  Any furnisher who fails to comply with the investigation requirements is liable to the

23
24

consumer for statutory damages, the costs of litigation and attorney's fees. 15 U.S.C. §1681o

25

14.  If the violation is willful, the furnisher is liable for actual damages or minimum statutory

26

damages between $100 and $1000 per violation, for punitive damages, as well as for costs and

27

attorney's fees. *15 U.S.C. §1681n*

28

SECOND AMENDED COMPLAINT AND DEMAND FOR TRIAL BY JURY

1

**JURISDICTION AND VENUE**

2

15.  The jurisdiction of this Court is conferred by *12 U.S.C. §2614; 15 U.S.C. §1681p; and*

3

*28 U.S.C.§1331.*  Venue is proper in this District pursuant to *28 U.S.C. §1391b.*

4

16.  Defendants conduct business in the state of California, and therefore, personal

5

jurisdiction is established.

6

17.  The true names and capacities, whether individual, corporate (including officers and

7

directors thereof), associate or otherwise of Defendants sued herein as DOES 1 through 20,

8

inclusive, are unknown to Plaintiff, who therefore sues these Defendants by such fictitious

9

names. Plaintiff is informed and believes, and alleges that each Defendant designated as a

10

DOE is involved in or is in some manner responsible as a principal, beneficiary, agent, co-

11

conspirator, joint venturer, alter ego, third party beneficiary, or otherwise, for agreements,

12

transactions, events and/or acts hereinafter described, and thereby proximately caused injuries

13

and damages to Plaintiff.  Plaintiff requests that when the true names and capacities of these

14

Defendants are ascertained, they may be inserted in all subsequent proceedings, and that this

15

action may proceed against them under their true names.

16

17

.**FACTUAL ALLEGATIONS**

18

18.  In 2014, prior to Defendants reporting the erroneous tradeline on Plaintiff's credit reports,

19

they called her over 40 times to collect on an Advanta credit card.  When Plaintiff was able to

20

answer the calls and speak to a live representative, she informed them repeatedly, on separate

21

occasions, to stop calling her, that she had no account with Advanta and had no responsibility for

22

any Advanta account.

23

24

19.  In July 2014 Plaintiff noticed CWS' reporting on her Transunion and Equifax

25

Credit reports.  She disputed this tradeline with the two consumer reporting agencies (as that

26

term is defined by *15 U.S.C. §1681a*) on the basis that this account was not hers.

27

28

SECOND AMENDED COMPLAINT AND DEMAND FOR TRIAL BY JURY

20.  After receiving the dispute on July 24, 2014, Transunion forwarded it to CWS for investigation.  CWS concluded its investigation on July 28, 2014, and advised Transunion to delete the erroneous tradeline from Plaintiff's report to Transunion, which it did on August 15, 2014.

21.  After closely examining her files and notes, Plaintiff realized that she did not receive a response from Equifax following the July 2014 dispute.

22.  From early August thru early November, she was away from home on unexpected travel between Los Angeles and the East Coast to care for her father who was ill at the time, and to attend to other personal matters.  During that time, she had a friend collecting her mail.  Upon returning home in early November, Plaintiff believed she had not received the Equifax report/results and immediately sent a second dispute letter to Equifax informing them that she had not received the report and requesting same.

23.  Plaintiff subsequently checked the mail that had been collected by her friend and discovered that Equifax had sent the August 2014 report.

24.  The report indicated that CWS had verified the erroneous tradeline in August 2014. Since Plaintiff returned home in November 2014, that is the earliest date Plaintiff knew or should have known of Defendant CWS' violation.

25.  Upon information and belief, Plaintiff alleges that CWS did not conduct a reasonable investigation of Plaintiff's July 2014 Equifax dispute.  Yet, despite this failure to properly investigate, it continued to willfully report the erroneous tradeline.  This allegation is supported by the facts enumerated below.

26. First, in 2014, prior to the tradeline reporting, Plaintiff received over 40 phone calls from Defendants and was told by Plaintiff on a number of occasions that the account was not hers and to stop calling her cell phone. Consequently, a review of their own records would have revealed

SECOND AMENDED COMPLAINT AND DEMAND FOR TRIAL BY JURY

the fact that the very existence of the account they were reporting was disputed, and that further inquiry was necessary to determine the owner of and other related details concerning the account-at-issue. This step would have been especially prudent given the fact that 220k accounts were received from Advanta by Defendants…it is certainly possible that some of those accounts may have been erroneous. Had CWS conducted a reasonable investigation, it would have determined that the account did not belong to Plaintiff. Second, the mere fact that Plaintiff never opened the account represented in the tradeline and had no responsibility for it would have been immediately evident had CWS checked its files for an application signed by Plaintiff; nothing of the kind exists as Plaintiff continues to aver that she had no account with Advanta. Third, the fact that the furnisher made inconsistent reports to the three reporting agencies based on the same dispute and instructed them to take inconsistent remedial measures despite processing the same information also gives credence to Plaintiff's claim that no reasonable investigation was undertaken.   Information in Defendant's own files would indicate that the results of its investigation into Plaintiff's July 2014 dispute found in her favor and resulted in its removal of the tradeline from Plaintiff's Transunion report just days before the Equifax dispute. Since the Equifax and Experian tradelines referenced the same account, and the basis of Plaintiff's dispute letters to Transunion, Equifax and Experian was the same (this account does not belong to me), the logical conclusion here is that any investigation conducted between July 2014 and November 2014 would have yielded the same result - - tradeline deletion from all CRAs reporting the erroneous tradeline. Finally, Defendants' directed Equifax and Experian to ultimately remove this tradeline in 2016, (which they did), following Plaintiff's 2016 CRA and direct disputes, which contained the same information as her 2014 disputes to the CRAs. The 2014 investigation involving these agencies should have had the same outcome - - tradeline deletion.

27.   The courts have consistently adopted the standard that the furnisher's reinvestigation must

-6-

SECOND AMENDED COMPLAINT AND DEMAND FOR TRIAL BY JURY

be evaluated under a reasonable investigation standard, which should be assessed from a number of factors. For example, the furnisher must consider the information communicated in or with the notice of dispute from the CRA 15 U.S.C. §1681(a)(1)(A). In addition, the furnisher must also consider other information available to it, including earlier complaints or other communications received from the consumer before the reinvestigation ever began.

28. CWS also failed to convey an accurate, clear and complete report of the Transunion investigative results to each credit reporting agency.

29. Under s-2(b), "if the investigation finds that the information is incomplete or inaccurate, [Defendants were required to] report those results to all other reporting agencies to which the person furnished the information" 1681s-2(b). In fact, even if the furnisher meets its obligation to conduct a reasonable investigation, it will still violate section 1681 s-2b) if it fails to convey those findings to reporting agencies or to conform its subsequent reporting to its findings. Since Defendants were reporting on Plaintiff's Equifax report and, as Plaintiff subsequently discovered, on her Experian report, results of the Transunion investigation were required to be reported to each of these entities. Defendant CWS failed to convey the results of the Transunion investigation, evidenced by the fact that the Equifax and Experian tradelines were not removed. If the same results were conveyed to all other agencies as was conveyed to Transunion, it follows that these tradelines would have been removed as well.

30. In addition, the Equifax reports' furnishing entity information indicate that Defendant CWS reported as "Advanta Business Service" from June 2014 until October 2014 when it began reporting as "Cardworks/Advanta" which continued until deletion of the tradeline in March 2016. Plaintiff discovered this violation in November 2014.

31. Finally, Plaintiff reviewed her personal credit reports and found that none of them included a notice that she disputed the erroneous tradeline, despite the fact that the tradeline had been

-7-

SECOND AMENDED COMPLAINT AND DEMAND FOR TRIAL BY JURY

disputed orally on several occasions with CardWorks, and in writing via a number of dispute

Plaintiff's letters to the CRAs.  Plaintiff discovered this violation in November 2014.

32.  The foregoing acts and omissions constitute numerous and multiple willful violations of the

FCRA, including but not limited to each and every one of the above-cited provisions of the

FCRA.

33.   Plaintiff sent an initial dispute to Experian in November 2014. Plaintiff was informed by

Experian and believes that CWS received notice of Plaintiff's dispute pursuant to 15 U.SC.

§1681i(a)(6), yet CWS continued to willfully report the erroneous tradeline. Experian

forwarded Plaintiff's dispute to CWS within five days of receiving it from Plaintiff.  CWS

verified the erroneous tradeline and continued reporting it in December 2014 and on subsequent

reports thru March 2016.

34.  Upon information and belief, Plaintiff alleges that CWS did not conduct a reasonable

investigation of Plaintiff's July 2014 Experian dispute.  Support for Plaintiff's contention was

discussed above in paragraph 26 and are applicable here as well.

35.  In addition, the furnishing entity information indicated that CWS reported on Plaintiff's

Experian reports as "Advanta Business Service" from October 2014 until June 2015 when it

began reporting as "Cardworks/Advanta" or "Advanta Bank/Cardworks".  These aliases

continued to reflect on Plaintiff's reports thru March 2016 when the tradeline was deleted.

36.  Plaintiff alleges that Defendants knew and intended to commit each act in conscious

disregard for the rights of others by its implementation of the policy of data conformity, a

charade where the furnisher simply confirms that the disputed information in the reporting

agencies' computers accurately reflects the information in the furnisher's computer that

generated the report in the first place, rather than conducting a reasonable investigation.

37.  This violation falls within Defendants' obligation under 1681g(a)(2) which requires

-8-

SECOND AMENDED COMPLAINT AND DEMAND FOR TRIAL BY JURY

furnishers to disclose the source of the information provided on the credit report.  While CWS

may have been successor of accounts from Advanta, they are not Advanta.  Since CWS was the

principal supplier of this information on Plaintiff's report, not Advanta entities, CWS' failure to

reflect that fact in transmitting tradeline information is willfully violative of the statute.

38.  Defendants' reporting as various entities is not only problematic because the information is

inaccurate, CWS' acts of reporting on multiple credit reports as one entity (or a hybrid) one

month, then in subsequent months as a different entity, gives the impression that there are several

different entities reporting, when in fact it is the same entity.  Since these tradelines were

characterized as "negative" by the agencies, the adverse impact on Plaintiff's creditworthiness is

obvious.

39.  Defendants' violations were either in conscious disregard of Plaintiff's rights or an actual

intent to thwart such rights, given the plain language of the statute regarding FCRA

requirements.  CardWorks is a global, sophisticated organization that has been engaged in

collecting/servicing delinquent accounts since 2001.  Its failure to bring its practices into

compliance despite its ample resources to do so, and its self-proclaimed knowledge of relevant

consumer protection laws, indicate a blatant disregard for the rights of consumers.

40.  As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual

damages as the Court may allow pursuant to 15 U.S.C. §1681n(a)(1); statutory damages pursuant

to 15 U.S.C. §1681n(a)(1); punitive damages as the Court may allow pursuant to 15 U.S.C. §

1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. §1681n(a)(3) from

Defendants.

41. Upon information and belief, Plaintiff alleges that credit reporting tradelines

reflecting as "Cardworks/Advanta" and "Advanta Business Service" were actually reported by

CWS, as Advanta Bank, in every form, closed its doors in 2010, it could neither furnish

SECOND AMENDED COMPLAINT AND DEMAND FOR TRIAL BY JURY

tradelines nor conduct/participate in any investigation of Plaintiff's dispute of this tradeline on her credit reports in 2014.

42.   Plaintiff, upon information and belief, alleges that pursuant to FCRA, Defendant CWI., is vicariously liable under the principle *Respondeat Superior* for the unlawful actions undertaken by its subsidiary CWS., in that CWI as the "master" either relies on the revenue produced by CWS (the servant), or materially participates in its daily operations, or is responsible for the costs for most of their materials operations. This theory comports with The Restatement (Second) of Agency, Section 2, which defines a servant as "an agent employed by a master [employer] to perform service in his affairs whose physical conduct in the performance of the service is controlled or is subject to the right to control by the master."

**COUNT 1**

**DEFENDANT CWS VIOLATED THE FAIR CREDIT REPORTING ACT BY FAILING TO CONDUCT REASONABLE INVESTIGATION OF EQUIFAX DISPUTE AND CONTINUING TO REPORT ERRONEOUS TRADELINE**

43.   Plaintiff re-alleges paragraphs 1-42 as though fully set forth herein.

44.   CWS failed to conduct a reasonable investigation after Plaintiff disputed the tradeline with Equifax, and *willfully* continued reporting the inaccurate trade lines, constituting a violation of the Fair Credit Reporting Act (FCRA) *15 U.S.C. §1681s-2(b)*.  This *willful* and unlawful reporting on Plaintiff's Equifax reports occurred monthly from August 2014 thru March 2016.  Plaintiff discovered violation in November 2014.

45.   Defendant CardWorks, Inc., in its capacity as parent company of Defendant CardWorks Servicing, LLC.,  is also and independently vicariously responsible for the actions of its servant/subsidiary, CardWorks Servicing, LLC., under the principle *Respondeat Superior.* CardWorks, Inc. is the primary beneficiary of revenue streams created by CardWorks Servicing, LLC., controls the acts and operations of its servant,  is able to spread risk between it and

-10-

CardWorks Servicing, LLC., and is consequently separately liable for each of the violations under the FCRA cited above.

### COUNT 2

**DEFENDANT CWS VIOLATED THE FAIR CREDIT REPORTING ACT BY FAILING TO CONDUCT REASONABLE INVESTIGATION OF EXPERIAN DISPUTE AND CONTINUING TO REPORT ERRONEOUS TRADELINE**

46. Plaintiff re-alleges paragraphs 1-45 as though fully set forth herein.

47. Defendants' failed to conduct a reasonable investigation after Plaintiff disputed the tradelines with Experian, and *willfully* continued reporting these inaccurate trade lines, constituting a violation of the Fair Credit Reporting Act (FCRA) *15 U.S.C. §1681s-2(b)*. This *willful* and unlawful reporting on Plaintiff's Experian reports occurred monthly from December 2014 thru March 2016.  Plaintiff discovered the violation in December 2014.

48. Defendant CardWorks, Inc., in its capacity as parent company of Defendant CardWorks Servicing, LLC., is also and independently vicariously responsible for the actions of its servant/subsidiary, CardWorks Servicing, LLC., under the principle *Respondeat Superior.* CardWorks, Inc. is the primary beneficiary of revenue streams created by CardWorks Servicing, LLC., controls the acts and operations of its servant,  is able to spread risk between it and CardWorks Servicing, LLC., and is consequently separately liable for each of the violations under the FCRA cited above.

### COUNT 3

**DEFENDANT CWS VIOLATED THE FAIR CREDIT REPORTING ACT BY FAILING TO CONVEY TO EQUIFAX AN ACCURATE, CLEAR AND COMPLETE REPORT OF ITS TRANSUNION INVESTIGATION**

49. Plaintiff re-alleges paragraphs 1-48 as though fully set forth herein.

50. Defendant CWS failed to convey to Equifax an accurate, clear and complete report of their findings following the July 2014 investigation involving the Transunion tradeline.

-11-

SECOND AMENDED COMPLAINT AND DEMAND FOR TRIAL BY JURY

51.  This *willful* failure to convey accurate, clear and complete findings to Equifax occurred in August 2014 and subsequently. Plaintiff discovered this violation in November 2014.

52.  Defendant CardWorks, Inc., in its capacity as parent company of Defendant CardWorks Servicing, LLC., is also and independently vicariously responsible for the actions of its servant/subsidiary, CardWorks Servicing, LLC., under the principle *Respondeat Superior*. CardWorks, Inc. is the primary beneficiary of revenue streams created by CardWorks Servicing, LLC., controls the acts and operations of its servant, is able to spread risk between it and CardWorks Servicing, LLC., and is consequently separately liable for each of the violations under the FCRA cited above.

## . COUNT 3

### DEFENDANT CWS VIOLATED THE FAIR CREDIT REPORTING ACT BY FAILING TO CONVEY TO EXPERIAN AN ACCURATE, CLEAR AND COMPLETE REPORT OF ITS TRANSUNION INVESTIGATION

53.  Plaintiff re-alleges paragraphs 1-52 as though fully set forth herein.

54.  Defendants *willfully* failed to convey to Experian an accurate, clear and complete report of their findings following the July 2014 investigation involving the Transunion tradeline.

55.  This failure to convey accurate, clear and complete findings to Experian occurred in August 2014 and subsequently.  Plaintiff discovered this violation in November 2014.

56.  Defendant CardWorks, Inc., in its capacity as parent company of Defendant CardWorks Servicing, LLC., is also and independently vicariously responsible for the actions of its servant/subsidiary, CardWorks Servicing, LLC., under the principle *Respondeat Superior*. CardWorks, Inc. is the primary beneficiary of revenue streams created by CardWorks Servicing, LLC., controls the acts and operations of its servant,  is able to spread risk between it and CardWorks Servicing, LLC., and is consequently separately liable for each of the violations under the FCRA cited above.

-12-

SECOND AMENDED COMPLAINT AND DEMAND FOR TRIAL BY JURY

1

## COUNT 4

2

3

### DEFENDANT CWS VIOLATED THE FAIR CREDIT REPORTING ACT BY FAILING TO NOTE ON THE EQUIFAX CREDIT REPORT THE TRUE SOURCE FURNISHING THE INFORMATION

4

57.  Plaintiff re-alleges paragraphs 1-56 as though fully set forth herein.

5

58.  Defendant CWS reported on Plaintiff's Equifax credit report as "Cardworks/Advanta Bank",

6

"Advanta Business Service" from August 2014 thru March 2016 despite the fact that Advanta (in

7

every form) closed its doors in 2010.  Plaintiff discovered this *willful* violation in November

8

2014.

9

10

59.  Defendant CardWorks, Inc., in its capacity as parent company of Defendant CardWorks

11

Servicing, LLC.,  is also and independently vicariously responsible for the actions of its

12

servant/subsidiary, CardWorks Servicing, LLC., under the principle *Respondeat Superior.*

13

CardWorks, Inc. is the primary beneficiary of revenue streams created by CardWorks Servicing,

14

LLC., controls the acts and operations of its servant,  is able to spread risk between it and

15

CardWorks Servicing, LLC., and is consequently separately liable for each of the violations

16

under the FCRA cited above.

17

18

## COUNT 5

19

20

### DEFENDANT CWS VIOLATED THE FAIR CREDIT REPORTING ACT BY FAILING TO NOTE ON THE EXPERIAN CREDIT REPORT THE TRUE SOURCE FURNISHING THE INFORMATION

21

60.  Plaintiff re-alleges paragraphs 1-59 as though fully set forth herein.

22

61.  CWS reported on Plaintiff's Experian credit report as "Cardworks/Advanta Bank", "Advanta

23

Business Service" from December 2014 thru March 2016 despite the fact that Advanta (in every

24

form) closed its doors in 2010.  Plaintiff discovered this *willful* violation in December 2014.

25

62.  Defendant CardWorks, Inc., in its capacity as parent company of Defendant CardWorks

26

Servicing, LLC.,  is also and independently vicariously responsible for the actions of its

27

28

SECOND AMENDED COMPLAINT AND DEMAND FOR TRIAL BY JURY

servant/subsidiary, CardWorks Servicing, LLC., under the principle *Respondeat Superior*.
CardWorks, Inc. is the primary beneficiary of revenue streams created by CardWorks Servicing,
LLC., controls the acts and operations of its servant, is able to spread risk between it and
CardWorks Servicing, LLC., and is consequently separately liable for each of the violations
under the FCRA cited above.

.                                            **COUNT 6**

**DEFENDANT CWS FAILED TO MARK TRADELINE "IN DISPUTE"**

63.  Plaintiff re-alleges paragraphs 1-62 as though fully set forth herein.

Defendant CWS failed to mark the Equifax tradeline in dispute following Plaintiff's 2014 verbal
and written disputes.

64.  At all times following Plaintiff's July 2014 dispute, CWS was aware that the tradeline was
in dispute by Plaintiff, as indicated by her verbal disputes to Defendants in several phone calls
made to her in 2014 and written disputes to the CRAs.

65.  Plaintiff has a private right of action under s-2(b), to challenge CWS' subsequent failure to
so notify the CRAs after receiving notice of Plaintiff's disputes under §1681s-2(b). Failure to do
so represents an "incomplete or inaccurate" entry on her credit file that CWS failed to correct
after its investigation into her Equifax July dispute.  It's failure to report a bona fide dispute, a
dispute that could materially alter how the reported tradeline is understood gives rise to a
furnisher's liability under §1681s-2(b) and constitutes a *willful* violation.

**WHEREFORE,** Plaintiff respectfully requests that judgment be entered against Defendant
CWS, for each violative act it committed with respect to each credit report (Equifax and
Experian) and, pursuant to *Respondeat Superior*, CWI is liable under the theory of vicarious
liability (principal-agency) for the violative acts of its subsidiary, CWS for actual or statutory
damages, punitive damages, attorney's fees and costs, pursuant to *15 U.S.C. §1681n*, and for

-14-

SECOND AMENDED COMPLAINT AND DEMAND FOR TRIAL BY JURY

such other relief as the Court may deem just for each FCRA violation. Plaintiff also requests that judgment be entered against the subsidiary, Defendant CardWorks Servicing, LLC. and each alter ego ("Advanta", "Advanta Bank", "Advanta Business Service", and "Advanta Credit Card") for each of their FCRA violations for actual or statutory damages, punitive damages, attorney's fees and costs, pursuant to *15 U.S.C. §1681n,* and for such other relief as the Court may deem just.

RESPECTFULLY SUBMITTED,

DATED:  May 15, 2017

By: _____  Terrace Ellis

-15-

SECOND AMENDED COMPLAINT AND DEMAND FOR TRIAL BY JURY

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28